[Civ. No. 5083. First Appellate District, Division Two.—April 1, 1925.]

## C. O. BASHAW COMPANY (a Corporation), etc., Respondent, v. WOOD & STEVENS, INC. (a Corporation), Appellant.

[1] AGENCY—SALE BY AGENT THROUGH FOREIGN CORRESPONDENT—RESCISSION—EXCESS OF AUTHORITY—ACTION FOR MONEYS LAID OUT AND EXPENDED BY AGENT—FINDINGS—EVIDENCE.—Where an agent instructed its correspondent in a foreign city to accept the rejection of prunes, which had been sold by the correspondent to a purchaser, to repay the amount paid by the purchaser, to resell the prunes, and promised that it (the agent) would pay the correspondent the difference between the amount of expenses incurred and the sum realized on a resale of the prunes, the principal cannot avoid payment to the agent for the amount thus paid to the correspondent on the ground that the agent exceeded its authority in accepting a rescission, where the principal, after it was informed of the purchaser's rejection, authorized the agent to use its own judgment in settling with the purchaser or in accepting the rejection and in otherwise disposing of the · prunes; and in this action by an assignee of the agent to recover moneys laid out and expended by the agent in behalf of the defendant principal, the evidence was sufficient to support the finding of the trial court that after the purchaser rejected the prunes, and defendant was informed of the rejection, the defendant thereupon authorized the agent "to use its own judgment in settling with said purchaser or in accepting said rejection and in otherwise disposing of said prunes."

[2] ID.—CONTRACTS—POWER OF AGENT.—In such action, where the agent had been authorized by the defendant to send the prunes in its own name to the foreign city, the agent would have the same rights to discharge, modify, or control the obligation of the contract as he had to make it.

[3] ID.—CONDITION OF GOODS—EVIDENCE.—In such action, the condition of the prunes, which were rejected by the purchaser, was material merely to show good faith or bad faith on the part of the agent.

[4] Id.—Evidence.—In such action, as the trial was before the court and not before a jury, the admission of immaterial testimony could do no harm. (On petition for hearing in supreme court, disapproved.)

[5] Id.—Findings—Judgment.—In such action, certain findings which are attacked by defendant are supported by the evidence; and even though some of the findings on the second count of plaintiff's complaint are vulnerable to the attacks made, nevertheless the judgment may not be disturbed, where it is fully supported by the first count and the findings made thereon.

[6] Id.—Rejected Findings—Incorporation in Record—Practice.— In such action, where the defendant (appellant) prepared and asked the trial court to incorporate certain paragraphs in its findings, which the trial court refused to do, and thereafter the defendant caused the proposed findings to be incorporated in the record and assigned the ruling of the trial court as error, the law does not authorize such practice, as the effect thereof is to convert the findings into a bill of exceptions or statement of the case.

[7] Id.—Findings—Judgment.—In such action, the point that the findings do not support the judgment cannot be sustained.

[8] Id.—Evidence.—In such action, the defendant suffered no material prejudice because of the rulings of the trial court in the admission of testimony.

---

(1) 2 C. J., p. 956, n. 86.   (2) 2 C. J., p. 609, n. 26, p. 646, n. 10, p. 962, n. 19; 4 C. J., p. 877, n. 80.   (3) 2 C. J., p. 950, n. 45 New. (4) 4 C. J., p. 999, n. 22.   (5) 4 C. J., p. 1057, n. 84.   (6) 4 C. J., p. 160, n. 65 New.   (7) 33 C. J., p. 1170, n. 37; 38 Cyc., p. 1986, n. 85.   (8) 4 C. J., p. 969, n. 56.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Mogan, Judge. Affirmed.

The facts are stated in the opinion of the court.

Alfred C. Skaife and Arthur L. Fullman for Appellant.

Norman A. Eisner for Respondent.

STURTEVANT, J.—The trial court, sitting without a jury, awarded the plaintiff a judgment as for moneys laid out and expended by plaintiff's assignor in behalf of defendant. The defendant has appealed under section 953a of the Code of Civil Procedure.

---

4.  See 24 Cal. Jur. 921.

The story as recited in the findings is told first by affirmative allegations in response to the first count contained in plaintiff's complaint, which is a common count as for moneys laid out and expended. The story is told again by affirmative findings in response to the second count pleaded in the complaint which purports to plead the facts. The latter findings are (1) that the plaintiff is a corporation; (2) that the defendant is a corporation; (3) That Herbert E. Gray Co. is a corporation; (4) that on August 7, 1919, the defendant requested Herbert E. Gray Co. to accept from defendant 574 fifty-pound boxes 100/120 prunes and consigned the same to Gray's correspondents in London and that Gray consented to do so without making any charge for his services; (5) that Gray thereupon consigned the prunes to Crichton, London; (6) and that the defendant furnished to Gray a description of the goods which Gray accepted and on which Gray offered the goods for sale in London and acting on that description Crichton sold the prunes and remitted to Gray as the net amount of the cash sales $3,281.98; (7) that on the arrival of said prunes in London, England, the purchaser thereof rejected the same because of the condition of said prunes and demanded back the purchase price that had been paid therefor; that said Alexander Crichton & Co. notified said Herbert E. Gray Co., Incorporated, and said Herbert E. Gray Co., Incorporated, notified said defendant of the fact of said rejection; that said defendant did thereupon authorize said Herbert E. Gray Co., Incorporated, to use its own judgment in settling with said purchaser or in accepting said rejection and in otherwise disposing of said prunes; that said Herbert E. Gray Co., Incorporated, acted in good faith, with diligence and care, and accepted said rejection and instructed said Alexander Crichton & Co. to return said purchase price and to endeavor to sell said prunes elsewhere; that said Herbert E. Gray Co., Incorporated, instructed said Alexander Crichton & Co. to advance the money to repay said purchase price and promised to repay to said Alexander Crichton & Co. any deficit that might remain upon the resale of said prunes; that the acceptance of said rejection was for the best interests of said defendant; that the market value of prunes of the character offered for sale and according to the description furnished by said defendant had risen since the time of said

sale in London, England, and that if said rejection had not been accepted, the said Herbert E. Gray Co., Incorporated, might have been rendered liable for substantial damages.

That Herbert E. Gray, the president of Herbert E. Gray Co., Incorporated, went personally from New York to London, inspected the prunes and acted for Herbert E. Gray Co., Incorporated, with reference thereto; that the condition of said prunes on the arrival of said Herbert E. Gray in London was such as to require immediate and prompt attention if same were to be resold; that it was necessary for Herbert E. Gray, representing said Herbert E. Gray Co., Incorporated, to act immediately; that a case of necessity existed for prompt and immediate action in the interests of said defendant; that said Herbert E. Gray acted reasonably, in good faith, and without negligence in authorizing said Alexander Crichton & Co. to return said purchase price and to endeavor to resell said prunes.

That said defendant was promptly notified by said Herbert E. Gray Co., Incorporated, of the acceptance of said rejection, the return of said purchase price and the instructions given to said Alexander Crichton & Co. to resell said prunes, and that upon the return of said Herbert E. Gray, the president of Herbert E. Gray Co., Incorporated, to New York, from London, England, where he had inspected said prunes and had acted for and on behalf of said Herbert E. Gray Co., Incorporated, said defendant did not repudiate or object to said action, but approved and ratified the same with full knowledge of all of the facts, and promised that it would take care of any amounts owing to said Herbert E. Gray Co., Incorporated, as soon as the net proceeds of said resales of said prunes were ascertained; (8) that Crichton accepted the return of the prunes, repaid the purchase price and thereafter made diligent efforts to resell the prunes and later returned to Gray a bill for $2,265.28 for the difference between the amounts received from the sale of the prunes and the expenses incurred; that Gray paid Crichton and thereafter assigned his claim to this plaintiff; (9) that Gray acted gratuitously and in accordance with the instructions of the defendant, and with diligence and in good faith; (10) that the defendant did not at any time sell the prunes to Gray; (11) that when the prunes arrived in London the same were in bad condition and that Gray "acted reasonably and in the interest of said defendant in authorizing the ac-

ceptance of said rejection, and the return of said purchase price, and the immediate resale of said prunes, and in not submitting the claim of the purchaser to arbitration or litigation. The court further finds that the condition of said prunes on their arrival in London, England, was not due solely or at all to the negligence or want of care of the purchaser of the prunes subsequent to his securing title to the same. The court does not find the particular time or place the said prunes became or were bad but does find that said Herbert E. Gray Co., Incorporated, acted reasonably and in the best interest of said defendant in all that it did respecting said prunes.''

The evidence showed without conflict that before the prunes arrived in London that Crichton on August 25, 1919, sold to Badcock, Bishop & Co., London, under a c. i. f. contract representing them to be ''Rosenberg Bros. & Co. pack average of the season of 1918,'' that contract contained a covenant ''all questions or disputes arising under this contract shall be referred to two arbitrators, one to be appointed by each party. In case such question or dispute arises respecting quality or condition, the buyer shall accept the goods and the arbitrators shall decide only the question of allowance (if any) to be made to the buyer. The arbitration shall be held in London and shall be claimed within seven days of the first arrival of the goods at the wharf at London or before removal from the quay in Liverpool or other ports.'' The evidence introduced at the trial consisted of the oral testimony given by Herbert E. Gray and the deposition of H. W. Brown, one of the agents of Alexander Crichton & Co. The testimony of those two witnesses was to the effect that the prunes were ''fermenting,'' ''full of life,'' and ''in very bad condition.'' The evidence showed affirmatively that neither the purchaser nor the seller demanded an arbitration.

We now take up the points made by the appellant. For reasons which will presently appear, we do not take them up in the order made by the appellant. [1] The fifth point made by the appellant is a claim that plaintiff's assignor exceeded his authority in accepting the rescission. The appellant states the point in five different ways. The burden of these attacks is that, assuming that Gray was an agent to sell, that he had no authority to rescind, or authorize the rescinding of an executed sale. If the record showed noth-

ing more than that Herbert E. Gray Co. was an agent to sell, of course there might be something in the point. However, the record shows affirmatively that when the purchaser inspected the goods and reported his rejection that that report was communicated to the defendant and as found by the trial court the "said defendant did thereupon authorize said Herbert E. Gray Co., Incorporated, to use its own judgment in settling with said purchaser or in accepting said rejection and in otherwise disposing of said prunes." That finding was fully supported by the evidence. Mr. Gray so testified. In an earlier part of his testimony he also testified that Crichton had advised him and, in turn, he had advised Wood, that if the dispute went to arbitration that the purchaser could claim loss of profits as an element of his damage, and as the price of prunes on the London market had risen that the item of damage would be a substantial one. In doing what he did regarding the rescission Mr. Gray did not exceed his authority. His authority was twofold and rested upon two separate principles of law. [2] In the first place, he had been authorized by the defendant to send the prunes in his own name to London. Under those circumstances he would have the same rights to discharge, modify, or control the obligation of the contract as he had to make it. (2 Cor. Jur., "Agency," sec. 289; *Ricketson* v. *Richardson,* 19 Cal. 330; *Hayes* v. *Campbell,* 55 Cal. 421 [36 Am. Rep. 43]; *Hoskins* v. *Swain,* 61 Cal. 338.) In the second place, after the goods had arrived in London, after they had been examined and rejected, and after these facts were reported to the defendant, Herbert E. Gray Co. received from the defendant a second authorization (finding 7, *supra*) to act in the matter. Under that second authorization Mr. Gray had full authority to do everything that he did. (2 Cor. Jur., "Agency," sec. 243; *Goldtree* v. *Swinford,* 74 Cal. 586, 589 [16 Pac. 493]; *Kuhlman* v. *E. J. Hart Co.* (Tenn. Ch. App.), 59 S. W. 455, 461; *Garnett* v. *Parry Mfg. Co.,* 185 Ala. 326 [64 South. 559, 561]; *Cole Carriage Co.* v. *Hacker,* 45 Ind. App. 368 [90 N. E. 923]; *Washington Cedar & Fir Products Co.* v. *Elliott,* 91 Conn. 350 [100 Atl. 29, 30]; *International Harvester Co.* v. *Swenson,* 135 Minn. 141 [160 N. W. 255].)

As no question is presented regarding the power of Mr. Gray to talk or act for his company, as no question of power is presented as to the authority of Mr. Wood to speak

and act for his company, and as nothing was done orally which under the statute of frauds should have been in writing, it becomes patent that the whole case becomes a question for the jury. In this respect the case is parallel with and we call attention to the ruling of the court in *Garnett* v. *Parry Mfg. Co., supra.* The various questions involved were therefore solely questions of fact for the determination of the trial court. As that court has found that the Herbert E. Gray Co. did not exceed its authority and as there is no conflict in the testimony in that behalf. the finding is supported by the evidence and is binding on this court.

Points 1, 2, 3, and 4 are all concerned with the actual condition of the prunes and as to whether that condition was good or bad, and, if bad, what caused it and when did it happen. If this case were one between the buyer and seller those points would be of interest; however, as between the Herbert E. Gray Co., as agent, and the defendant, as principal, the gravamen of the case is whether there was exercised by the former undue authority. [3] The condition of the prunes became material merely to show good faith or bad faith on the part of the agent.

Under point 6 the appellant makes twenty separate attacks on the admission or rejection of evidence. [4] We have examined each one and we find no substantial merit in any one of the attacks. It may be conceded that some immaterial testimony was admitted, but, as the trial was before the court and not before a jury, it is patent that immaterial testimony could do no harm. The judgment of the trial court can be sustained only as the same is supported by material testimony and not by any quantity of immaterial testimony. But in this behalf it should be remarked that we find very little immaterial testimony creeping into the record through any one of the rulings complained of.

[5] In the seventh point the appellant claims that certain findings are not supported by the evidence. We have examined each separate finding attacked and have examined the evidence and find that each of the said findings so attacked is supported by the evidence. However, there is another answer to this attack. The findings mentioned, each and all, were addressed to the second count of plaintiff's complaint. No attack whatever is made on the findings responsive to the allegations of the first count. Therefore,

even though some of the findings on the second count are vulnerable to the attacks made, nevertheless the judgment may not be disturbed, as it is fully supported by the first count and the findings made thereon.

[6] In the trial court the appellant prepared and asked the trial court to incorporate certain paragraphs in its findings. The trial court refused. Thereafter appellant caused the proposed findings to be incorporated in the record and the ruling of the trial court is assigned as error. No such practice is authorized by law. The effect of the practice attempted was to convert the findings into a bill of exceptions or statement of the case. Of course that is improper practice.

[7] The last point made is that the findings do not support the judgment. This point is supported by the argument that the first part of the finding which we have numbered 11 is contradictory of the latter part of the same finding. A mere reading demonstrates that there is nothing in the point.

We find no error in the record. The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 28, 1925, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing in the supreme court, after judgment in the district court of appeal, is denied.

We disapprove of that portion of the opinion wherein it is said: "As the trial was before the court and not before a jury, it is patent that immaterial testimony could do no harm," as not embodying a correct statement of the law on the subject. (*Smith* v. *Westerfield*, 88 Cal. 374, 383 [26 Pac. 206]; *Rulofson* v. *Billings*, 140 Cal. 452, 460 [74 Pac. 35]; *Title Ins. Co.* v. *Ingersoll*, 153 Cal. 1, 9 [94 Pac. 94].) [8] As the case is one within the jurisdiction of and originally appealed to this court, we have examined the record and are convinced that appellant suffered no material prejudice because of the rulings of the trial court in the admission of testimony.

All the Justices concurred.